*CARR, J.
The deed of emancipation of Hannah, executed in 1796, by Rachel Magruder, then a feme sole residing in Maryland, purports to give the slave her freedom not presently, but after some years. It was executed under a statute of *341 Maryland of 1752; a statute very darkly and clumsily penned. That statute speaks of deeds giving- freedom in presentí, and deeds giving freedom in futuro ; and, to my understanding, requires that the former shall be evidenced b3’ two witnesses, but that the latter shall be good if acknowledged before a magistrate and recorded. The deed before us is so acknowledged and -recorded. I, therefore, should have considered it good and valid, but that we find it -decided by the court of appeals of Maryland, in James v. Gaither, that a deed giving future freedom, must be evidenced by two witnesses, as well as acknowledged before a magistrate, and recorded. Yielding my opinion to the construction given to this statute of Maryland by her own courts, I shall proceed to consider the next and much more important question, arising-under our own laws, and affecting a numerous class of cases.
Was the county court right in its instruction to the jury, that the deed of emancipation of 1798, executed by Rachel Magruder, then a feme sole residing in Fluvanna, was good and effectual? Against the validity of this deed several objections were taken at the bar. It was insisted, that it was a nullity until it was fully proved in court: that it must take its date as a deed from the time of such final proof: that the delivery of the deed, if delivered to the witness •or another, was no delivery in law, but a mere authority to have it recorded; an authority revocable by the grantor, at anj' -moment before full proof in court; and revoked in this case, by her marriage and death before such proof was exhibited: and that the probat was not in the proper county. At common law, we know, the sealing and delivery of a deed make it binding at once on the grantor, and irrevocable by any after act of his; and this delivery may be either by word or act, and either to the grantee or a third person ; *and any thing which amounts to evidence that the act or word was meant as a delivery, will constitute one. The delivery being the perfection and consummation of the deed, throws the proof of any restriction or condition upon it, on the grantor. All this will be admitted, as ■to deeds between parties capable of contracting; but it was insisted, that as slaves are not so, none of these rules apply to deeds of emancipation. But do not these rules apply to deeds of gift, and may not such deeds be executed to many who have a capacity to receive deeds, though not to contract? In truth, is not every deed, as a common law instrument under seal, governed by the same rules? Does not the execution of the deed, in all cases, take from the grantor the power of revocation? When the statute gives every owner the right to emancipate his slave by instrument in writing, under his hand and seal, it describes (to my mind) a deed; and to this deed we must annex (unless the statute forbid it, which it does not) the common law incidents and attributes of deeds, with the principles which govern them. As, then, slaves may be emancipated by deed, such deed may be delivered; for a delivery is necessary to its completion, and such delivery binds the grantor from its date; for such is the rule of the common law. It is true, this rule is so far controuled by the statute, that the deed is not effectual, unless proved by two witnesses, or acknowledged by the party in the court of the county where he resides; but when so proved or acknowledged, it is a deed from the date of its execution. And it will be remarked, that though in other cases, eight months are given, as the general period within which deeds shall be recorded, in deeds of emancipation no time is limited. It was contended at the bar, that there could be no delivery of this deed of emancipation, but to the court which received the final proof; and that, of consequence, it could not, till such pro-bat, be consummated. But the statute itself shews that this is a mistake. It says, “the instrument may be proved in the county court by two witnesses.’ ’ Now, to what would they testify? *Why, that on some prior day, they saw the grantor sign, seal and deliver the deed, or heard him acknowledge the same. The delivery, then, in all such cases, must be out of court, and prior to the probat.
It was considered (in the argument) monstrous, that a deed should thus be held back for twenty years, and when at length proved, have relation to its execution, and thus intercept rights which had grown up in the meantime. But, 1. the law has limited no time within which, if the deed be not recorded, it shall be void; and 2. this tardiness of the second witness can hardly be charged to the paupers; for on their rights it has operated most injuriously. By the deed, one of them (if entitled at all) was entitled to be free in 1806; the other in 1807: yet they remained in slavery, and the deed unproved, till 1819; and if this last witness had died, they might have lost wholly the benefit of it. By this delay in the proof, then, they had every thing to lose; the appellant, every thing to gain.
But it was said, that the decisions of this court have settled the doctrine, that the deed is a nullity until fully proved according to the statute; and Givens v. Manns and Lewis v. Fullerton, were referred to. I have examined these cases, and do not think they go so far. In Givens v. Manns, all the court said on the point, is this: “the court is further of opinion, that the alleged deed of emancipation (made part of the record in this bill of exceptions) not being acknowledged or proved in the court of the county or corporation, as the law directs, was not so authenticated as to make it evidence in the trial, nor ought to be received as such evidence, until it shall be proved or acknowledged before the proper court. ’ ’
Here we see, the deed, so far from being treated as a nullity, expressly considered as an existing deed; not so authenticated, to be sure, as to make it evidence; but stilt capable of being made so, by proof in the proper court. In Lewis v. Fullerton, the deed of emancipation was executed in Ohio, by Rogers, styling himself a citizen of Virginia: it looked to this state for its operation and effect, *but was not proved according to our laws: and the court said, “In that case, it must, to *342 have its effect, conform to the laws of Virginia. It is insufficient, under those laws, to effectuate emancipation, for want of a due recording in the county court, as was decided in Givens v. Manns, in this court.” Thus we see, that in neither of those cases, was the deed pronounced null and void, but in each, the deed was treated as a deed defective^7 proved.
With respect to the third objection, that the deed was not proved in the proper county; the grantor resided in Fluvanna, when the deed was executed, and also when it was proved in the court of that county by one witness: and it is clear to me, that that was the proper court to receive the full proof.
Upon the whole, I am of opinion, that the instruction of the county court was right as to the Virginia deed, and that both judgments should be affirmed.
GREEN, J.
But for a decision of the court of appeals of Maryland in 1807, I should have thought that the deed of emancipation, executed and recorded in that state in 1796, would have effectually emancipated the appellee Hannah, from the time appointed by the deed; there being an obvious distinction in the authentication required by the Maryland statute of 1752, for instruments giving immediate freedom, and those giving it in futuro. The statute of Maryland of 1810, repudiate the decision of the court, by confirming all instruments authenticated as this is, saving the vested rights of strangers, and those affirmed by previous adjudications: and if this case was not to be decided by a Maryland court, Hannah would necessarily prevail by force of the instrument of 1796. But, as the Maryland statute of 1810 never attached upon this case, we ought to yield to the construction given to the statute of 1752, by the supreme judicial tribunal of that state.
The case turns, then, on the effect of the instrument executed in Virginia in 1798, which the appellant insists was *not duly recorded, either as to the place or time where and when it was recorded.
If this paper could be recorded any where, so as to give it effect after the marriage and death of the owner who executed it, I think the county in which she resided at the time of its execution, was the proper place in which to record, it, although she no longer continued to reside there. The literal terms of the section of our statute authorising the emancipation of slaves, do not require, that the instrument of emancipation, when recorded upon the proof of witnesses, shall be proved in any particular county or corporation court. It is only when it is authenticated by the acknowledgment of the owner, that it is required to be acknowledged in the court of the county in which he resides. According to those literal terms, in the first case of proof by witnesses, it is sufficient if that be made in the court of any county or corporation of the state. But this is probably not the true construction of the statute, as it might counteract its policy in requiring the instrument to be proved or acknowledged in a court: whatever was the object of that requisition, it will be best promoted bj7 confining the proof or acknowledgment to the county, in which the owner resided at the time of the attestation of the witnesses, or of the acknowledgment of the owner.in court; for that is the place, in which all who have any interest in the existence of the instrument, would most probably look for it; especially in the cases where, the emancipation was to take effect immediately; which, indeed, were the only cases in the immediate contemplation of the legislature, as is manifest from the concluding terms of the section, “who shall thereupon be intirely and fully discharged &c.” And although when the emancipation is to tafie effect in futuro (as in this case) which has been repeatedly held to be valid, some other rule, as to such a case, in the event of the removal of the owner, or ot any one claiming under him, with the slave, to another county in the state, might be more desirable, the court cannot prescribe such a rule as it may think expedient, *but must apply the rule prescribed by the statute, to all cases indiscriminately.
Did the full proof of the instrument, made after the marriage and death of its author, give it validity? Such an instrument has no effect in giving freedom, until it be proved or acknowledged, in the manner prescribed bj7 the statute, as was held by this court in Givens v. Manns: and it is therefore insisted, by the appellant’s counsel, that not being a contract between parties capable of contracting, and a pure emanation of the will of the owner, he may revoke it at pleasure, at any time before it shall be consummated and take effect b37 the proof or acknowledgment required by the statute; and that in this case, the instrument was revoked bj7 the marriage, and especially by the death, of its author. It is not necessary to inquire, whether the party might, under such circumstances, actually revoke such an instrument with effect, since there has not been any such actual revocation, either by the original owner or her husband, after her marriage, or death; and, in the absence of any evidence of an intention to revoke it, the question is, whether the marriage or death of the owner executing the instrument, has that effect? This depends upon the common law doctrines of relation, according to which, when several acts are necessary to the consummation of any purpose, and all are done, the last act relates to the first, and the whole takes effect from the date of the original act; especially, when the object of the transaction would be frustrated by a contrary construction — ut res magis valeat quam pereat. And this being the chief object of such relations, they are generally confined to that object, and not allowed to operate to the prejudice of third persons, and not even of a party beyond the necessity of preventing the total frustration of the main purpose of the transaction. Without going at large into the cases on this subject, I refer, generally, to these cited in Viner’s title Relation. Thus, to give only one instance, an escrow delivered upon condition, does not become the deed of the party, even as between the parties *343 “themselves, until the performance of the condition and the second delivery, and only operates from the latter period. 13 Vin. Abr. Faits, O. 3, pl. 1, p. 29. Yet if it be made by a feme sole, and she marry before the condition performed or the second delivery, or if the grantor or obligor die in that interval, the deed is valid, by relation to the first deliverj' as an escrow. 18 Id. Relation, E. pl. 1, 2, p. 290. I can see no distinction between those cases and that at bar, the relation being resorted to in each, for the sole purpose of giving effect to the intention of the party. And this could prejudice no stranger to the transaction, if it was not allowed to extend (as I think it ought not) to affect the creditors of or purchasers from either the wife or husband. But there is none such in this case. A husband is not a purchaser of his wife’s property by the marriage: he only thereby acquires the marital rights of a husband, and takes her property as she held it, to all intents and purposes, unless something has been done in contemplation of the marriage, in fraud of those rights. In this case, there is nothing of that sort. I think the judgment should be affirmed.
CABELL, J.
The requisites to an instrument of emancipation, under our statute, are, that it be ‘ ‘under the hand and seal” of the party making it, and that it be “attested and proved in the county or corporation court, by two witnesses, or acknowledged by the party in the court of the county or corporation, where he or she resides.” It is not necessary that it should be by deed. If the legislature had intended it to be by deed, it would have been so declared, either by speaking of it expressly as a deed, or by the use of equivalent expressions. Thus we find, in the firs+ section of the statute of conveyances, (1 Kev. Code, p. 361,) where it was meant to declare, that the title to lands shall not pass but by deed, the expressions are, as follows; “no estate of inheritance or freehold, or for a term of more than five years, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing, “'sealed and delivered.” And even if the instrument of emancipation be accompanied with all the forms and requisites of a deed; be in writing, signed, sealed and delivered; yet it is manifest, that the law attaches no importance to the circumstance of its being a deed: for it would be just as effectual without being delivered as a deed, as it would be when delivered in the most solemn form. The statute no where calls it a deed : it speaks of it only as the instrument of emancipation.
But it is important to consider the analogy between a deed at common law, and an instrument of emancipation under the statute. A deed is a writing sealed and delivered. All these requisites, writing, sealing and delivery, are essential to give it efficacy as a deed. Although it be attended with all the requisites, except the final one, delivery, it is no deed; and the party who has signed and sealed, does not thereby impose on himself any obligation to complete it by delivery: he retains full power over the instrument: he may withhold its delivery, or may obliterate and destroy it. He retains, moreover, full power over the subject of the instrument, and may make any other disposition thereof he may think proper. And even when a deed is completed by delivery, the delivery has no relation back, so as to give it effect from the time when it was written, or when it was signed, or even when it was sealed. It operates as a deed only from the time when it was delivered. Let us apply these principles to the case before us.
An instrument of emancipation, like a deed at common law, has many requisites; writing, signing, sealing, attestation and proof or acknowledgment in the court of the county or corporation where the party resides. Proof or acknowledgment in court is to an instrument of emancipation, what delivery is to a deed at common law. It is the final requisite, .without which all others stand for nothing. This is established by Givens v. Manns and Lewis v. Fullerton. And I think it perfectly clear, on principle, that this final requisite, proof or acknowledgment before the proper court, can no more have relation back to the date of “the instrument of emancipation, than the delivery of a deed at common law, has relation back to the date of the deed; for the party has, at all times before this final act, the same power over the instrument and its subject, that the party to a writing signed and sealed but not delivered, has, at common law, over the instrument, or the subject of the instrument. He has even greater power; for, in some cases, a writing signed and sealed, but not delivered, may operate as a contract, although it may have no effect as a deed. But an instrument of emancipation, not completed by proof or acknowledgment in court, can never operate as a contract: there can be no contract between master and slave.
By the marriage of Eachel Magruder, in this case, she ceased to be owner of the slaves, which thereby became the property of her husband; andas that event happened before the proof of the instrument, and of course before it had taken effect as an instrument of emancipation, it could not take effect as such afterwards; since none but the owner of slaves can emancipate them.
The silence of the legislature, as to the time within which an instrument of emancipation may be recorded, affords a strong argument against its having relation back io any period prior to the probat. If it had intended any such relation, it would not have permitted the party to hold the instrument up to an indefinite period, to the destruction of rights intermediately acquired.
Upon the question, what is the proper court in which to record an instrument of emancipation, I give no opinion; it not being necessary to be decided in this case.
I think the county court erred in giving the instruction excepted to by the appellant.
COALTEE, J., concurred in this opinion.
BEOOKE, P.
The construction given to the law of Maryland by the decision of the court of that state, puts the Maryland deed of emancipation out of the case. The only question, then, is as to the validity *344 of the Virginia *deed of emancipation ; and that depends on the construction of our own statute authorising emancipation of slaves, and prescribing the mode.
I do not think, that, in considering this question, any light is to be borrowed from the doctrines of the common law, applicable to deeds of conveyance of property, to which the party has a perfect right, and over which 4ie has full dominion. Such deeds are consummated by delivery alone, and they take effect from their date, unless there is something in them to the contrary. Independent of the statutory provision, an instrument of emancipation of a slave, from its nature, from the relation in which the grantor and grantee stand to each other, could confer no right, though delivered to the grantee or to some one for him: he is still a slave and incapable of receiving such right, if the grantor had the power to convey it, which is not admitted, since it is one of the highest acts of sovereignty, to elevate a slave from his degraded state to the rank of a freeman. Although it had been the practice of owners to emancipate their slaves, before the act of 1691 forbidding such emancipation except on certain conditions, that practice gave no perfect right to owners, of their own will, to emancipate their slaves; nor did the permission under that act, or the subsequent statutes down to the present time, to emancipate slaves, confer more than an imperfect right, to be exercised by the owners in the manner prescribed by those laws. No equivalent for the requirements of the statutes, no constructive proof of the recording or delivery, of the deed of emancipation, founded on any supposed right in the owner or his grantee, could be resorted to. This was the principle which governed the decision in Givens v. Manns. The question of emancipation, is a question of statutory law, and can only be dissolved by referring to the terms of the statute. The statute, after prescribing the mode of emancipation, with great particularity, provides, that the persons so emancipated, “shall thereupon” (from the time the. requirements of the statute shall have been complied with, in all its particulars,) “be intirely and fully ^discharged &c. and enjoy as full freedom, as if they had been named in this act:” that is to say, by force of the specific provisions of the statute, and not by virtue of any general, undefined power or right, supposed to exist in the owner, independently of the statute, to emancipate them. Therefore, there can be no relation to the date of the deed to fix the period of emancipation : until the terms of the statute be complied with, they are slaves to all intents and purposes: they cannot be emancipated by a fiction of the common law invented to protect existing rights. The statute having made no provision for the proof and recording of deeds of future emancipation, such deeds ought, perhaps, never to have been established ; yet as they have been sanctioned by the decisions of this court, in this spirit of humanity, rather than- in the spirit of the law, I do not mean now to question them. But if such deeds as the one before us, are brought within the statute, they must be subject to all its requirements, like deeds of present emancipation. They cannbt be put on higher ground.
In the present case, the grantor in the deed had married, removed from the county, and was dead, before the deed in question, was attempted to be consummated by proof in the court of the county in which the grantor had formerly resided. The marital rights of her husband, had attached upon the property in her slaves. His will and not her’s was to be consulted. His right to the slaves could not, without his own consent, be overreached by the proof and recording of the deed, even if it were a question of property merely. But it is enough, that the grantor had, by her marriage, lost her power to emancipate the slaves before the requirements of the statute had been complied with; that she was dead before the deed was proved and recorded; and that, in either view, the requirements of the law could not be complied with.
Both judgmeiits are reversed, and the cause remanded for a new trial, in which no such instructions as those excepted to, are to be given to the jury.